## Rawlins v. Commonwealth.

(Decided Sept. 29, 1936.)

HAFFORD E. HAY for appellant.

B. M. VINCENT, Attorney General, and W. OWEN KELLER, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Affirming.

Sam Henry was assassinated while going up Sweet Lick creek in Estill county, by being shot in the head with a shotgun at close range. His home was about a quarter of a mile farther on. The appellant, Hugh Rawlins, lived 350 or 400 yards away from the place. Witnesses at a nearby house, hearing the shot, looked around and saw Henry falling. He was about dead when they reached him. The evidence connecting the appellant with the homicide, for which he stands convicted and under a sentence of life imprisonment, is circumstantial.

On Friday preceding the Monday on which Henry was killed, in or near an orchard on the creek, the defendant, while ringing a shotgun shell, put a steel ball in

it and said to a neighbor, "Troy, this will be the shell that will take Sam Henry away tomorrow." In Irvine on the morning of the day of the assassination the defendant said to the witness, "Troy, you know that shell I fixed out yonder; that will be the shell that takes Sam Henry away before 4 o'clock." Although this witness testified he *thought* the deceased was his uncle, he said nothing about the incidents because "it wasn't nothin' to me." A short time after the defendant had returned from the penitentiary he was being admonished by his cousin to keep out of trouble, and he responded, "No, I hain't satisfied; I will never be satisfied until I kill Sam Henry." It appears also that Henry had been in the penitentiary for shooting appellant. Upon his return, not long before he was killed, a lady friend suggested to the defendant that she had heard that he and Sam had made friends. He replied that they had, but said "that didn't satisfy his soul," that "it just took Henry's God damned life to satisfy his soul." Rawlins was confined in jail seven or eight days before the killing. He accused Henry of being responsible for it, and said to a fellow prisoner, "If his feet ever hit the ground he would kill him." About a month before, when Henry was passing the defendant and some other men, he asked one of the party for a gun, but the witness could not say definitely what his statements were as to his purpose.

About an hour before Henry was killed the defendant was in his yard singing. Within a few minutes of it, he was standing near his house where he could have seen the approach of the deceased up the creek road. A few minutes after the shot was heard, he went running to the home of his sister near by, and, going in the back way, wanted to borrow some salt, although he brought nothing to put it in. When she told him that some one had blown Sam Henry's brains out, he replied, "Oh, hush." Fifteen or twenty minutes later he again left his home and asked a passerby what the disturbance was. The witness responded that he would find out before he went to town. The defendant went along with him for a short distance and then stated that he would go back and change his clothing and go to town with him. He did change his clothing. Coming out, he inquired what the trouble was down the road, and was told that Henry had been killed.

That afternoon Arch Spicer asked the defendant,

"Hugh, aren't you ashamed of killing old man Sam Henry?" He laughed and replied, "That damned son-of-a-bitch needed killing." A deputy sheriff found tracks of a man leading from the scene towards the defendant's home. It had been raining and the impressions were not very clear, but appeared to have been made by one in sock feet or wearing a sandal or soft-soled shoe. Rawlins had on rubber-soled tennis shoes. Obtaining a search warrant for the home, the officers found some of the defendant's clothing which were wet and a shotgun recently fired and a shell similar in size and character to that which had been used in the shooting of Henry. As they approached to arrest Rawlins, he threw something from his pocket.

The defendant testified that on the day of the killing he returned home from Irvine about noon, and having been drinking, went to bed and slept about two and a half hours. His daughter awakened him. He was at home looking at his sweet potato vines when he heard the shot which killed Henry. He did not go down there, he said, because of the trouble which had existed between Henry and himself, but a little later he went to his sister's home to borrow some salt. This was about 3 o'clock in the afternoon. He had supposed, he testified on cross-examination, that the shot which he heard was made by some one killing a rabbit with a pistol. Of the many threats proven against him, the defendant denied only that he had told his cousin that it would take Sam Henry's life to satisfy his soul. He did not remember showing Troy Henry the shotgun shells or saying that it would be used "to take Sam Henry away." The defendant's attempted explanation of the circumstances shown against him was quite feeble. His daughter testified that her father was in the yard when the shot was fired; went to his sister's; and upon his return reported that some one had killed Sam Henry. But she says that he had not come home drinking or drunk. It was shown in rebuttal that she had said after the killing that her father was at home in bed when the shot was heard.

It is argued in behalf of the appellant that the conviction, being wholly upon circumstantial evidence, entitled the defendant to a directed verdict of acquittal under the rule that where all of the proven facts are as consistent with innocence as with guilt, the verdict cannot be sustained. This record is about as far removed

from the applicability of that rule as it is possible for one to be. It seems to us to state the case is to decide it. The probative force of circumstantial evidence increases progressively with the adding together of consistent inculpatory facts. It is like the weaving of strands into a cable which binds the accused to the commission of the crime. Cassell v. Commonwealth, 248 Ky. 579, 59 S. W. (2d) 544; Bullock v. Commonwealth, 249 Ky. 1, 60 S. W. (2d) 108, 94 A. L. R. 407. The evidence would hardly be more convincing of guilt if a multitude of witnesses had testified to having seen the accused deliberately point the gun and pull the trigger.

Wherefore, the judgment is affirmed.